## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————————
CARL WILES,                                          :
                                                     :
                    Petitioner,                      :          Civ. No. 17-5077 (RBK)
                                                     :
         v.                                          :
                                                     :
UNITED STATES OF AMERICA,                            :
                                                     :          **OPINION**
                                                     :
                    Respondent.                      :
———————————————————————————     :

**ROBERT B. KUGLER, U.S.D.J.**

    Petitioner is a federal prisoner currently incarcerated at FCI Oakdale, in Oakdale, Louisiana. He is proceeding *pro se* with a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Respondent filed an answer opposing relief, (ECF No. 9), and Petitioner filed a reply, (ECF No. 12). For the reasons discussed below, the Court will deny the § 2255 motion and deny Petitioner's motions to compel an update and to appoint counsel as moot.

## I.       BACKGROUND

    This case arises from Petitioner's participation as a leader in a drug trafficking organization. Petitioner admitted responsibility for his role in distributing approximately 926 grams of heroin, 2,328 grams of cocaine base, and 675 grams of cocaine, between January of 2012 and April of 2013. The investigation involved physical and video surveillance, controlled purchases, and court-authorized wiretaps.

    The wiretaps and other evidence revealed Petitioner's communications regarding the status of his drug set[1] workers and securing the supply of drugs to his organization. Petitioner used

---

[1] A term for an open-air drug market.

several locations to package and store drugs and distributed them through drug sets under his control.  The investigation also showed that members of Petitioner's organization used firearms to control and protect their drug trade.  Ultimately, law enforcement found a total of seventeen guns during the arrests and searches, including seven guns at the residence where officers arrested Petitioner, and another two guns at a residence under Petitioner's control.  Officials also seized approximately $213,695.

On or about April 8, 2013, the Government filed a criminal complaint in this Court, charging Petitioner with: distributing and possessing with intent to distribute 280 grams or more of a mixture or substance described in 21 U.S.C. § 841(b)(1)(B)(ii)(II) containing cocaine base, a Schedule II drug controlled substance, contrary to the provisions of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii); and 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I drug controlled substance, contrary to the provisions of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(i) and a detectable amount of cocaine, a Schedule II drug controlled substance, contrary to the provisions of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). (*United States v. Wiles*, Crim No. 13-429, ECF No. 1).

On or about December 23, 2015, the Government offered Petitioner a plea agreement.  In exchange for pleading guilty to a two-count information that charged him with conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, a Schedule I controlled substance; 28 grams or more of cocaine base, a Schedule II controlled substance; and 500 grams or more of cocaine, a Schedule II controlled substance, contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), in violation of 21 U.S.C. § 846; and being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), the Government would not initiate any further

criminal charges against Petitioner for his role in the drug trafficking conspiracy and agree to a certain offense level.

Among other things, the plea agreement notified Petitioner that: Count 1 carried a maximum prison sentence of 40 years, and a statutory mandatory minimum sentence of 5 years; and Count 2 carried a maximum prison sentence of 10 years. (Crim. No. 13-429, ECF No. 235, at 2). Further, the agreement set forth the parties' stipulations regarding the United States Sentencing Guidelines. The parties agreed that the total Guidelines offense level was 31, and that if the Court sentenced Petitioner at or below the Guidelines range of 31, the agreement would preclude him from challenging the sentence.

The agreement also stated that both parties, with few exceptions, would waive their rights "to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." (*Id*. at 4). On December 26, 2015, Petitioner accepted and signed the plea agreement. (*Id*. at 8).

Petitioner appeared for his plea hearing before this Court on January 5, 2016. (Crim. No. 13-429, ECF No. 234, 313). The Court advised Petitioner of his rights, reviewed the stipulations in the plea agreement with him, and explained the sentencing process. In particular, the Court asked Petitioner if he had gone over the agreement with his counsel and whether he understood the agreement. Petitioner answered in the affirmative.

As detailed more fully in the following sections, the Court also explained, with few exceptions, that Petitioner was waiving his right to appeal or collaterally attack his sentence. (Crim. No. 13-429, ECF No. 313, at 19:23 to 21:16). After explaining other provisions, the Court elicited a factual basis for the charges. Thereafter, the Court found that Petitioner knowingly and

intelligently entered into the plea agreement, accepted his plea, and found him guilty. (*Id*. at 30:20 to 31:5).

The Court held a sentencing hearing on August 9, 2016.  The United States Probation Office issued a presentence report ("PSR") and calculated Petitioner's offense level at 33 with a criminal history category of III.  Pursuant to the plea agreement, however, the Court changed the offense level to 31, which placed Petitioner's Guidelines range at 135 to 168 months in prison. (Crim. No. 13-429, ECF No. 312, at 4:19–20).  The Court ultimately sentenced Petitioner to a term of 148 months in prison on Count 1 and a term of 120 months in prison on Count 2, to be served concurrently. (Crim. No. 13-429, ECF No. 272).

Petitioner did not file a direct appeal.  On or about July 5, 2017, Petitioner filed the instant § 2255 motion.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a motion to vacate, set aside or correct a sentence of a person in federal custody, entitles a prisoner to relief if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  When considering a § 2255 motion, a district court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).  A district court must *sua sponte* hold a hearing on the motion "'if the files and records do not show conclusively that [the movant] was not entitled to relief.'" *Id.* (quoting *Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001)).

## III.    DISCUSSION

In Petitioner's words, he contends that his counsel was ineffective for failing to: (1) competently litigate a Fourth Amendment claim for suppression; (2) properly argue that wiretap evidence was not properly sealed under 18 U.S.C. § 2518(8)(a); (3) object to the district court's ruling on an issue unopposed by the Government; (4) argue that the Court used the wrong standard in deciding the delay in sealing of the tapes issue under 18 U.S.C. § 2518(8)(a); (5) file a motion for recusal; (6) challenge that "the chain of custody" had not been established sufficiently; (7) challenge the district court's ends of justice continuance, which was not specifically limited in time as required under the Speedy Trial Act; and (8) raise a proper argument that the Government violated Petitioner's rights under 18 U.S.C. § 3161(h)(1), through bad faith delay in moving for indictment and speedy trial. (ECF No. 1, at 6).

In response, the Government contends that Petitioner waived all of his claims under the terms of the plea agreement and seeks to enforce the agreement's collateral attack waiver.  The Government also argues, that in any event, Petitioner's counsel was not ineffective.  The Court will first address whether Petitioner entered into an enforceable collateral attack waiver.

### A.  Knowing and Voluntary

Generally, under 28 U.S.C. § 2255, a prisoner who is in federal custody may petition the court which imposed his sentence to vacate, set aside or correct its sentence.  The Third Circuit has held, however, that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008), *abrogated in part on other grounds by Garza v. Idaho*, 139 S. Ct. 738 (2019); *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001). Such waivers can include the waiver of the right to file an appeal or a motion to vacate, set aside

5

or correct sentence under § 2255, or both. *United States v. Mitchell*, No. 15-0021-6, 2017 WL 4838841, at *2 (E.D. Pa. Oct. 25, 2017) (citing *Mabry*, 536 F.3d at 236, 241). "Waivers of appellate and collateral attack rights in criminal cases do not contravene public policy" and courts should strictly construe such waivers. *Id*.; *see also e.g*., *Khattak*, 273 F.3d at 562.

If a defendant agreed to a waiver of appeals and collateral attack rights "knowingly and voluntarily," they are valid, unless "they work a miscarriage of justice." *Mabry*, 536 F.3d at 237. (citing *Khattak*, 273 F.3d at 562). Petitioner bears the initial burden of presenting an argument that renders his waiver unknowing or involuntary, but Courts have "an independent obligation to conduct an evaluation of the validity of a collateral [attack] waiver." *Id*. at 238.

Here, the language of Petitioner's plea agreement is unambiguous as to the scope of waiver and its effect to bind Petitioner and the Government to its provisions. Under the terms of the agreement, Petitioner acknowledged that by pleading guilty he was waiving nearly all of his rights "to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." (Crim. No. 13-429, ECF No. 235, at 2). The agreement also set out limited exceptions to the waiver that are not relevant to the present case. Additionally, the agreement includes provisions through which Petitioner acknowledged that he understood those rights and limitations, that he and his counsel fully discussed the plea agreement, and that he was agreeing to plead guilty. (*Id*. at 8).

At the plea hearing, the Court conducted an extensive colloquy prior to accepting Petitioner's plea. It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that creates a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This Court explained to Petitioner that he needed to assure the Court that he was responsible for the crimes to which he was pleading guilty, that

6

Petitioner understood the consequences of pleading guilty, that the plea agreement reflected a mutual understanding of its terms, that Petitioner was knowingly and voluntarily pleading guilty, and that Petitioner received proper legal representation.  The Court also advised Petitioner that if he was in any way confused, did not understand something, felt there was a mistake being made, or if he had a problem, no matter how minor, that the Court would stop the proceedings and provide him with all the time he needed to speak with counsel.

During the colloquy, Petitioner stated that he understood and agreed with everything in the plea agreement and affirmed that he signed the agreement. (Crim. No. 13-429, ECF No. 313, at 12).  The Court reviewed the terms of the agreement with Petitioner, including that Petitioner was waiving his right to appeal or collaterally attack his sentence, as follows:

> Q. Under paragraph 18 you give up some very [important] rights and let me go over those with you. Do you know that ordinarily you would have the right to appeal or file a motion or a writ as to any sentence I give you?
>
> A. Yes.
>
> Q. And the government has certain rights to file an appeal or a motion as to any sentence I impose.  Do you understand that?
>
> A. Yes.
>
> Q. You and also the Government are willing to give up forever waive that right to appeal or file a motion or a writ under a certain condition, and that condition is this.  *If I do agree with your stipulations and if I do agree that your sentence Guideline offense level is 31, if I do agree to sentence you at or below a 31, then you cannot appeal, you cannot file a motion or you could not file a writ to try to change that sentence.*  Do you understand that?
>
> A. Yes.
>
> Q. In other words, if I do go along with this, and I sentence you at or below a 31 offense level, you're going to be forever stuck with that sentence.  You can never get it changed.  Do you understand that?

7

A. Yes.

Q. Now *did you discuss this with Mr. Borden and were you satisfied with his advice about giving up this important right*?

A. Yes.

Q. The Government also agrees they will not file a motion or appeal if I sentence you at or above an offense level of 31. Do you understand that?

A. Yes.

Q. Now, you also agree in this paragraph that if I accept any of these other stipulations we just went over, you cannot file an appeal saying or a motion or any kind of attack in saying I was wrong to accept these other stipulations because you've agreed to them.   You understand that, don't you?

A. Yes.

Q. Paragraph 19 simply provides that *if either side violates paragraph 18, that is that they file a motion or file a writ or they file an appeal where they promised not to, the other side gets to ask the court to dismiss it because it violates this agreement.*   Do you understand that?

A. Yes.

(*Id*. at 19:23 to 21:16 (emphasis added)).

Consequently, Petitioner affirmed that he understood each part of the appeal and collateral attack waiver in response to the Court's inquiry. (*Id*.).   After the Court summarized the other provisions, such as the maximum and mandatory minimum prison term, the fines for the offenses charged, and his risk of deportation, Petitioner confirmed that the terms were consistent with the plea agreement and that he understood those provisions.   The Court then elicited a factual basis and found that Petitioner was guilty of all the elements of the charged crimes, was acting

knowingly and intelligently, fully understood the consequences of the waiver, and accepted the plea. (*Id.* at 30:20 to 31:5).

Having scrutinized the plea agreement and the colloquy, the Court is satisfied that Petitioner understood the terms of the plea agreement and the provisions waiving his right to appeal or to collaterally attack his sentence. *Mabry*, 536 F.3d at 238–39. Before the Court accepted the plea agreement, it assured itself that Petitioner had not been coerced or misled in any way into entering into the agreement. The Court explained the waiver at length, Petitioner responded directly to the Court's questions, and the Court provided him with ample opportunity to speak with counsel. Without more, Petitioner fails to provide any reason for the Court to question the presumption that the statements he made during the plea hearing were true. Indeed, Petitioner's only argument on the issue is as follows:

> The facts are that as a layman Wiles did not recognize counsel's errors and was unable to evaluate counsel's professional performance, and did not know that he had not been represented competently until after his plea and sentencing when he consulted with a paralegal and read certain books in the law library. It is then that he realized that he had a meritorious ineffectiveness [sic] claim suited for collateral review.

(ECF No. 12, at 6). Effectively, Petitioner appears to *imply* that if counsel had done a better job earlier, he would not have accepted the plea agreement. Petitioner, however, does not directly attack counsel's performance with regard to the plea agreement or the plea hearing. Petitioner, in essence, has buyer's remorse.

Such an argument does not change the conclusion that Petitioner knowingly, voluntarily, and intelligently entered into the plea agreement, that he fully understood the consequences of its collateral attack waiver, and that counsel had properly advised him as to the plea agreement and during the plea hearing.

Accordingly, the record reflects that Petitioner agreed to waive his appellate and collateral attack rights both knowingly and voluntarily, creating an enforceable waiver. *See Khattak*, 273 F.3d at 563 (holding that a waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired under Federal Rule of Criminal Procedure 11 and as to whether the defendant received a sentence within the terms of his plea agreement); *Muhammad v. United States*, No. 08-0061, 2010 WL 2771772, at *3 (D.N.J. July 13, 2010); *Colon v. United States,* No. 05-123-2, 2009 WL 37487, at *2 (E.D. Pa. 2009) (holding that defendant's waiver of his right to appeal or collaterally attack his conviction or sentence is enforceable because there was no support in the record that he acted unknowingly or involuntarily).

## B.  Miscarriage of Justice

Finding that Petitioner entered into an enforceable waiver does not end the inquiry.  The Court must now determine whether enforcing the collateral attack waiver would result in a miscarriage of justice, by considering: the "'clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the [parties], and the extent to which the defendant acquiesced in the result.'" *Khattak*, 273 F.3d at 562–63 (quoting *U.S. v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).  The Third Circuit cautioned, however, that it would be an "unusual circumstance" where an "error amounting to a miscarriage of justice may invalidate the waiver." *Id*. at 562.

First, this Court will address the third factor, the extent to which Petitioner acquiesced in the result, as it is easiest to determine.  This factor "weighs heavily in favor of upholding the waiver" in these § 2255 proceedings. *Jones v. United States*, No. 13-3748, 2016 WL 81253, at *5 (D.N.J. Jan. 7, 2016).  As described above, the plea agreement and colloquy with the Court establish full acquiescence with the result.  In terms of the second factor, the impacts on the parties

10

are "in balance here because if this case were reopened for a new trial both parties would be impacted by the passage of time, the loss of memory, and potential loss of evidence." *Id.* at \*6 (citing *United States v. Cannistraro*, 800 F. Supp. 30, 57 (D.N.J. 1992)).

Additionally, this is not a case raising allegations that counsel was coercive in negotiating the plea agreement that contained the waiver. *See United States v. Wilson*, 429 F.3d 455 (3d Cir. 2005) (stating that enforcing a waiver in connection with a coerced plea would work a miscarriage of justice). Further, the broad waiver clearly encompasses the pretrial issues in the instant motion.

The Court will now address the remaining factor concerning the clarity, gravity and character of the alleged errors of counsel in determining whether enforcing the waiver would serve to work a miscarriage of justice on Petitioner. Each of Petitioner's claims is of the ineffective assistance of counsel variety.

An ineffective assistance of counsel claim has two components. First, a petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" under the Sixth Amendment's right to counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, a petitioner must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

More specifically, the first prong of the test requires a petitioner to show "that counsel's representation fell below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v.*

*Louisiana*, 350 U.S. 91, 101 (1955)).  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

The second prong of *Strickland*, prejudice, requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Collins v. Sec. of Pennsylvania Dept. of Corr.*, 742 F.3d 528, 547 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).

The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. *Strickland*, 466 U.S. at 696.  Courts view prejudice "in light of the totality of the evidence at trial and the testimony at the collateral review hearing." *Collins*, 742 F.3d at 547.  In cases involving a guilty plea, a petitioner demonstrates "prejudice" by showing that "there is a reasonable probability that, but for the counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course. *Id.*

### 1.  Grounds One, Two, Three, Four, Six, Seven, and Eight

Seven of Petitioner's eight grounds for relief generally concern counsel's alleged failures as to evidentiary and speedy trial issues.  Petitioner, however, waived all of these claims by pleading guilty.  It "is well established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues." *See, e.g.*, *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007) (citations omitted); *see also United States v. Gonzalez*, 472 F. App'x

132, 135 (3d Cir. 2012).  "A guilty plea . . . simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975).

 "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Owens*, 427 F. App'x 168, 171 (3d Cir. 2011).

With those principles in mind, the seven claims related to evidentiary and speedy trial issues challenge alleged non-jurisdictional defects in Petitioner's prosecution that occurred prior to his guilty plea.  As discussed above, Petitioner knowingly, voluntarily, and intelligently entered an unconditional plea of guilty.  Consequently, Petitioner waived his right to pursue these claims. *See, e.g.*, *Owens*, 427 F. App'x at 171 (finding waiver of suppression claims); *Gonzalez*, 472 F. App'x at 135 (finding waiver of statutory and constitutional speedy trial claims).

In turn, because Petitioner waived these claims, he fails to meet either prong of *Strickland* and likewise fails to establish that the clarity, gravity, and character of the alleged errors weigh in his favor.  Accordingly, Petitioner's arguments are without merit and a miscarriage of justice would not result if the Court enforced the waiver at issue on these seven grounds.

### 2.  Ground Five

Petitioner's remaining argument, that counsel should have filed a motion to recuse under 28 U.S.C. § 455(a), requires additional analysis.  The Circuit Courts of Appeal are split on the issue of whether, through a guilty plea, a defendant waives his right to challenge the denial of a

motion to recuse under § 455(a), and the Third Circuit has not yet addressed the issue. *See United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003) (detailing the circuit split on the issue).   In this case, however, Petitioner never filed a motion to recuse, but rather, argues that counsel *should* have filed such a motion.

Under § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Third Circuit has defined this standard as when a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *United States v. Antar*, 53 F.3d 568, 574 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001).  The Court cautioned, however, that "[b]iases stemming from facts gleaned during judicial proceedings themselves must be particularly strong in order to merit recusal." *Id*.; *see also United States v. Churuk*, 797 F. App'x 680, 693 (3d Cir. 2020).  The judge's actions must be "so extreme" and "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Antar*, 53 F.3d at 574 (quoting *Liteky v. United States*, 510 U.S. 540, 550 (1994)); *see also Churuk*, 797 F. App'x at 693.

On the other hand, "a judge should recuse himself under § 455(b) when any of the specific circumstances set forth in that subsection exist, which show the fact of partiality." *Patti*, 337 F.3d at 1321 (citing 28 U.S.C. § 455(b)(1)-(5)).

In *Patti*, the Eleventh Circuit explained the differences between subsections (a) and (b) and emphasized that under § 455(e), Congress explicitly forbade judges from accepting waivers under subsection (b), but not subsection (a).  *Id*. at 1322 (quoting 28 U.S.C. § 455(e) ("No justice, judge, or magistrate judge shall accept from the parties . . . a waiver of any ground for disqualification enumerated in subsection (b).  Where the ground for disqualification arises only under subsection

14

(a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification.")).

"In light of the differences between subsections (a) and (b), particularly Congress's express provision for waiver of recusal under subsection (a), [the Eleventh Circuit] conclude[d] that the 'denial of recusal is a pretrial defect which is sublimated within a guilty plea'" *Id.* (quoting *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir. 1988)).  Consequently, the Eleventh Circuit joined the Fifth and Tenth Circuits[2] to hold that a defendant waives his right to challenge "the denial of a § 455(a) motion by entering an unconditional guilty plea." *Id.* at 1320–21.

This Court finds the Eleventh Circuit's reasoning to be persuasive and concludes that even if Petitioner had properly preserved his right to challenge the recusal issue, *i.e.*, by filing a motion to recuse, his unconditional guilty plea waived that right. *See id.*  Accordingly, Petitioner cannot meet either prong of *Strickland* on a waived issue, and a miscarriage of justice would not result if the Court enforced the waiver on this ground.

That said, the Court will alternatively deny this ineffective assistance claim on the merits. Petitioner primarily argues that this Court "improperly signed the wire tap paperwork authorizing

---

[2] As the Eleventh Circuit explained:

> The First and Second Circuits base their holdings upon the belief that the appearance of impropriety goes to the heart of the judicial proceedings and fundamental fairness. See *United States v. Brinkworth*, 68 F.3d 633, 636–37 (2d Cir. 1995); *United States v. Chantal*, 902 F.2d 1018, 1020-21 (1st Cir. 1990). Although the integrity of the judiciary and the public's confidence in the judicial system clearly prompted Congress to enact this statute, Congress expressly provided for waiver in § 455(a) cases. Thus, the statutory provision itself indicates that the appearance of impropriety, although important, was not as critical as the fact of impartiality.

*Patti*, 337 F.3d at 1322.

the improper sealing of the alleged . . . tapes or disk," which "left in question whether the tapes belonging to Mr. Wiles had actually been placed in the correct sealing envelope." (ECF No. 1-1, at 27–28).  Petitioner offers his "belief that the sealing order which had the wrong phone number on it did not contain any tape or disk relating to the Wiles investigation." *Id.*  According to Petitioner, the Court must have been biased because "it personally participated in the alleged manifest constitutional error involving the improper handling and sealing of the tapes." (*Id.* at 28).

Petitioner refers to the following events, which transpired at a motion hearing, after the Court heard other arguments on a motion to suppress wiretap evidence:

> THE COURT: Mr. Borden,[3] you also raise . . . this interesting anomaly in the Sealing Order of February 6th, 2013 where the telephone number in the body of the order is different than the telephone number in the wrap sheet. Although the electronic serial numbers are identical.
>
> MR. BORDEN: Yes, sir. And with respect to that item, Your Honor, I think it's pretty straightforward. The order that was submitted by the Government, and excuse me. The application submitted by the Government requests the tapping of a different telephone number than the one that is eventually ordered. So, I think the statute is pretty clear that –
>
> THE COURT: Well you submitted the Sealing Order. You didn't submit the difference you claim is in the authorization wiretap.
>
> MR. BORDEN: Yes. I'm sorry. I misspoke, Your Honor. The Order, the Sealing Order that the Government submitted to you and which the court entered seals recordings from a different telephone number, and –
>
> THE COURT: Yeah, both from same electronic serial number I mean that's –
>
> MR. BORDEN: Yes, sir.
>
> THE COURT: The electronic serial number doesn't give you the identifier, isn't it?

---

[3] Defense counsel.

MR. BORDEN: I believe the Government will make that point, Your Honor.

THE COURT: All right. *That's pretty clear it's a typographical error.* Wish it hadn't happened, but it did.

. . . .

[After hearing other arguments and explaining other reasons for denying the motion to suppress wiretap evidence]

MR. RICHARDSON: And, Your Honor, are you going to rule on the sealing issue?

. . . .

THE COURT: *I thought it was just a typographical error.*

MR. RICHARDSON: Very good.

THE COURT: The electronic identification number is the same.

MR. RICHARDSON: Correct.

(Crim. No. 13-429, ECF No. 152, at 24:24 to 26:2, 36:24 to 37:5) (emphasis added).

Petitioner contends that the Court advocated for the Government by "suggesting" a typographical error, because the Government had "remained silent on and failed to oppose" the sealing order challenge. (ECF No. 1-1, at 22). Petitioner also argues that during this exchange, the Court "constantly and abruptly interrupted counsel's legal presentation," which showed the Court's bias. (*Id.* at 30). Petitioner appears to believe that without the Court's inquiry, the Government would not have contested the issue, and he would not have suffered an adverse ruling.

The Court rejects Petitioner's arguments. In deciding an issue, a court may inquire into matters it deems relevant and voice its conclusions. The Court inquired into the sealing order anomaly, considered the record and defense counsel's arguments as to that issue, and came to the

*conclusion* that it was a typographical error.  The Court was not "advocating" on behalf of the Government.

Ultimately, Petitioner takes issue with the Court's adverse ruling, but courts have consistently held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . . they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism" necessary without an "extrajudicial source."  *Litekey*, 510 U.S. at 555 (citing *United States v. Grinnell Corp*., 384 U.S. 563, 583 (1966)).  "Almost invariably, they are proper grounds for appeal, not for recusal." *Id*.  Indeed, as the Third Circuit has held, "a party's displeasure with legal rulings does not form an adequate basis for recusal." *SecuraComm Consulting, Inc. v. SecuraCom, Inc.*, 224 F.3d 273 (3d Cir. 2000).

Beyond the adverse ruling, the Court finds that its occasional interruption of defense counsel and the rest of the "record in this matter [are] devoid of any objective evidence of actual bias, the appearance of bias, or of the type of 'deep-seated favoritism or antagonism' that would justify recusal." *United States v. Cox*, No. 11-99, 2014 WL 12900822, at *1–2 (D.N.J. Oct. 2, 2014) (quoting *Litekey*, 510 U.S. at 554).  As a result, had defense counsel filed a motion to recuse, the Court would have denied that motion.

Consequently, Petitioner fails to demonstrate that a motion to recuse would have been meritorious, and in turn, cannot show a reasonable probability that he would have proceeded to trial but for counsel's failure to file such a motion. *See Hill*, 474 U.S. at 59.  Likewise, as the claim has no merit, Petitioner cannot show that trial counsel was deficient for failing to pursue a meritless claim.  Accordingly, as Petitioner fails to meet either prong of *Strickland*, a miscarriage of justice

would not result if the Court enforced the collateral attack waiver on this ground. Alternatively, the Court denies this claim on the merits.

Finally, to the extent Petitioner argues that the undersigned should recuse himself from hearing the instant § 2255 motion, the Court will deny that request. As discussed above, Petitioner's claims of bias lack merit, and Petitioner's dissatisfaction with his adverse ruling is not a ground for recusal. *See Lewis v. Lynch*, No. 16-7528, 2017 WL 2256959, at *2 (D.N.J. May 19, 2017).

## IV.     CERTIFICATE OF APPEALABILITY

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Based on the discussion above, reasonable jurists would not find it debatable as to whether the Court should enforce the collateral attack waiver on each of Petitioner's claims, and that in any

event, Petitioner's recusal claim lacks merit.  Consequently, the Court will not issue a certificate of appealability.

### V.  CONCLUSION

For the foregoing reasons, the Court will enforce the collateral attack waiver on Petitioner's claims and alternative deny his recusal claim on the merits.  Accordingly, the Court will deny Petitioner's § 2255 motion and deny his motions to compel an update and to appoint counsel as moot.  A certificate of appealability shall not issue.  An appropriate Order follows.


DATED:  August  26,  2020                          s/Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge